# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The places and items described in Attachment A,
fully incorporated herein.

)
)
)
)
)
)

Case No. 18 - m - 007

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

The places and items described in Attachment A, fully incorporated herein.

located in the Eastern District of Wisconsin, there is now concealed:

The fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(7) (identity theft), 1028A (aggravated identity theft); 1029(a)(3) (access device fraud); 1342 (mail fraud), and 1344 (bank fraud); and Title 42, United States Code, Section 408(a)(6) (false statements to SSA), as further described in Attachments A and B, fully incorporated herein.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 1028(a)(7), 1028A, 1029(a)(3), 1342, and 1344; and Title 42, United States Code, Section 408(a)(6)

The application is based on these facts: See attached affidavit of Special Agent Nathan R. Catura.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Nathan R. Catura

Sworn to before me and signed in my presence:

Date: Feb. 2, 2018

_____
Judge's signature

City and State: Milwaukee, Wisconsin                    David E. Jones, U.S. Magistrate Judge

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Nathan R. Catura, being first duly sworn, hereby depose and state as follows:

<u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I am a Special Agent with the Social Security Administration, Office of the Inspector General (SSA/OIG), and have been so employed since May 1998. I am currently assigned to the Milwaukee field office. As a Special Agent with SSA/OIG, I am responsible for investigating waste, fraud and abuse against the SSA, schemes involving fraudulently receiving Social Security cards and other related violations of federal law, including identity theft. I have had the opportunity to conduct and participate in hundreds of fraud related investigations and have participated in the execution of numerous search warrants involving business and personal records.

1.      For more than a year, I have participated in the investigation of Taylor C. WILSON (DOB 7/28/1983) together with United States Postal Inspector Jeffrey Metke of the United States Postal Inspection Service Domicile and Greenfield Police Detective Brian Wallander, a federal task force officer assigned to the United States Secret Service Financial Crimes Task Force in the Eastern District of Wisconsin.  As the investigation has progressed, it has become clear that WILSON has created a scheme to fraudulently use the United States Mail to commit numerous federal offenses, including but not limited to aggravated identity theft and bank fraud.  In particular, the investigation has revealed that WILSON has stolen the identities of at least eight individuals, identified herein by their initials N.L., L.A., B.D.A., A.B., C.S., S.P., C.D., and L.B.  As part of her scheme, WILSON has also made false statements to the Social Security Administration to fraudulently obtain Social Security cards, in violation of 42 U.S.C. Section 408(a)(6).

2.      I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search WILSON'S residence, 2869 S.6th St.

Apartment 3, Milwaukee, Wisconsin, 53215, and seize items believed to be evidence of WILSON'S identity theft scheme.

3.    This affidavit is based upon my personal knowledge and observations, information I have received from other law enforcement personnel, information from others with knowledge regarding relevant facts, and the review of documents and reports.

4.    Because of the limited purpose of this affidavit, it does not contain each and every fact known to me concerning this investigation.

<u>PLACES AND ITEMS TO BE SEARCHED AND SEIZED</u>

5.    The places and items to be searched and seized are the fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(7) (identity theft), 1028A (aggravated identity theft); 1029(a)(3) (access device fraud); 1342 (mail fraud), and 1344 (bank  fraud); and Title 42, United States Code, Section 408(a)(6) (false statements to SSA), as described in Attachments A and B, which are incorporated herein by reference.

<u>PROBABLE CAUSE</u>

**Original Investigation and Identification of WILSON**

6.    Detective Wallander initiated this case with an identity theft investigation of victim N.L. in Greenfield, Wisconsin, which revealed that Taylor C. WILSON had stolen the identity of another victim, L.A., and then used the assumed identity of L.A. to steal the identity of the original victim, N.L.   Specifically, in July 2016, an individual identified by the initials N.L. reported that she was the victim of identity theft. Thereafter, Detective Wallander learned of 48 fraudulent transactions concerning N.L's Tri City National Bank checking account for a total loss in excess of $10,000. Detective Wallander determined that the fraud to N.L's bank account began in September 2014 when two payments were made to Time Warner Cable on behalf of an individual

identified by the initials L.A. Additionally, in September 2015, N.L's bank account incurred a debit to Progressive insurance for L.A. There were also four additional payments made to Santander Consumer USA in the name of L.A.

7.	Santander Consumer USA reported that the above-referenced payments were for an auto loan through a dealership in Schaumburg, Illinois, for the purchase of a 2008 Jeep Liberty, bearing Wisconsin license plate "408-YDW." The loan was processed in October 2015 for $8,970.

8.	Detective Wallander ran a registration check of license plate number "408-YDW" through the Wisconsin Department of Transportation and found this vehicle had been reported as stolen to the Milwaukee Police Department on April 22, 2016, by L.A., Female/Black, who indicated that she was born in 1988. L.A. further reported that the 2008 Jeep Liberty had been stolen outside her apartment building located at 3731 W. Oklahoma Avenue, Milwaukee, Wisconsin.

9.	On October 27, 2016, Detective Wallander interviewed L.A., Female/White, DOB year 1988 at her residence in the 1400 block of West Lincoln Avenue, Milwaukee, Wisconsin. L.A. stated that she never owned a 2008 Jeep Liberty and never resided at 3731 W. Oklahoma Avenue. L.A. also denied using a Tri City National Bank account to make car and insurance payments. Handwriting exemplars from L.A., Female/White, were compared to auto loan documents for the 2008 Jeep Liberty, and they did not match.

10.	Detective Wallander interviewed the manager for the Oklahoma Garden Apartments that rented the apartment at 3731 W. Oklahoma Avenue and confirmed that the apartment was rented by a person who identified herself on the rental contract as L.A.; DOB year 1988. However, when shown a photograph of L.A., Female/White, the manager stated that the person depicted in the photograph was not the L.A. who rented the apartment. The manager stated

that the person who rented the apartment was a black female. The manager provided Detective

Wallander with the tenant's previous address of 1341 McDowell Road, Naperville, Illinois, 60563.

11.     Detective Wallander determined that L.A., Female/Black, DOB year 1988 was

stopped by the Milwaukee County Sheriff's Department on February 10, 2016, for operating a

vehicle without a valid license. The vehicle stopped was the same 2008 Jeep Liberty described

above. The driver produced an Illinois identification card in the name of L.A., number

45352088645A, and provided a home address of 1341 McDowell Road, Naperville, Illinois,

60563.

12.     On October 31, 2016, Detective Wallander contacted the Naperville Police

Department and learned that L.A. was a suspect in an open 2014 identity theft case. The Naperville

Police Department provided Detective Wallander with a copy of L.A's Illinois identification card

(4535208864A) which depicted a black female and included the address of 1341 McDowell Road,

Naperville, Illinois. Subsequent investigation revealed that this McDowall Road address does not

exist.

13.     Detective Wallander submitted L.A's Illinois identification card to the Wisconsin

Department of Transportation and requested that the photograph be run through facial recognition

software to determine if anyone with a Wisconsin driver's license or identification card matched

the person in the Illinois identification card. The next day, facial recognition software returned a

match in the name of Taylor C. WILSON, Female/Black, DOB 07/28/1983.

14.     Subsequent investigation revealed that WILSON had also opened checking and

saving accounts in the name L.A. at Educator's Credit Union, North Shore Bank, and UW Credit

Union.  These accounts were opened by WILSON using the same Illinois identification card

(45352088645A) issued in the name of L.A., but bearing the photographic image of WILSON, as

her required proof of identity. The accounts were all eventually closed for suspicious or fraudulent activity.

15.    For example, in response to a grand jury subpoena, Educator's Credit Union provided records indicating that a checking account in the name of L.A. was opened on February 12, 2015, using Illinois identification card (45352088645A) and an SSN ending in 8709. According to the SSA database this SSN has not been assigned to anyone. The account was closed after 35 counterfeit payroll checks were drawn from the account under the fictitious business name of Cambridge Healthcare Agency in Aurora, Illinois. The total loss sustained by Educator's Credit Union for these checks is $21,999.08.

16.    On November 12, 2016, WILSON was arrested while inside the UW Credit Union after credit union representatives reported that a woman who identified herself as L.A. was attempting to complete a suspicious transaction. At the time of her arrest, WILSON was in possession of Illinois identification card (45352088645A) in the name of L.A., as well as a Netspend Mastercard, a UW Credit Union debit card, and a Potawatomi Fire Keeper's Club Red Card – all in the name of L.A. WILSON had driven a 2014 Nissan Sentra to the UW Credit Union. The motor vehicle registration revealed WILSON had registered the Nissan Sentra with the Wisconsin Department of Transportation in the name of L.A. at an address of 2136 N. Prospect Avenue, Apt 135, Milwaukee, Wisconsin 53202.

**WILSON'S Use of the United States Mail and the Search of her Former Residence**

17.    A Commercial Mail Receiving Agency or CMRA is a private business regulated and empowered by the United States Postal Service to receive, handle, and deliver United States Mail to a private version of a "Post Office Box". Well known examples of a CMRA would be the franchise businesses Mail Boxes Etcetera and The UPS Store. All commercial entities wishing to

conduct business as a Commercial Mail Receiving Agency must apply to and register their business with United States Postal Service. Just as if opening a real Post Office Box inside of a United States Postal Service facility; all customers wishing to open a mail-receiving box at a CMRA are required to completely and accurately fill out a United States Postal Service Form number 1583, properly identifying themselves with photographic identification documents like a Driver License or a Passport. One local CMRA business is East Bank Storage located at 2136 N. Prospect Avenue, Milwaukee, Wisconsin 53202.

18.     Detective Wallander and Postal Inspector Metke traveled to the address of 2136 N. Prospect Avenue, Apt 135, Milwaukee, Wisconsin 53202 and found this was not an apartment building but instead was East Bank Storage. While there was no apartment 135, WILSON had opened a mail-receiving account in the name of L.A. for box 135 on August 29, 2916. A review of the United States Postal Service Form number 1583 for box 135 revealed WILSON presented an Illinois identification card in L.A.'s name as proof of identity when completing Postal Service Form number 1583 for East Bank Storage. WILSON listed parties to receive mail at this box as L.A., WILSON, and T.A.

19.     At the time of her November 12, 2016, arrest, WILSON was under Probation Supervision by the Wisconsin Department of Corrections for an earlier criminal conviction. For violating the conditions of her Probation Supervision, WILSON was placed in secure detention from November 12, 2016, until approximately February 13, 2017.

20.     Detective Wallander and Postal Inspector Metke monitored incoming mail going to the East Bank Storage box 135 which WILSON had set up in L.A.'s name. The true L.A. signed a form consenting to the seizure and inspection of any United States Mail in her name. For example, on November 17, 2016, they collected mail addressed to both Taylor WILSON and L.A.

from box 135. One item of mail addressed to L.A. was from Nicholas Financial Inc., the lien holder on the 2014 Nissan Sentra seized at the time of WILSON'S November 12, 2016, arrest. This item of mail was an invoice for a car payment on that vehicle dated November 8, 2016.

21. On or about December 1, 2016, Detective Wallander obtained and executed a state search warrant for WILSON's then residence, 1573 S. 74th Street, West Allis, Wisconsin. Hundreds of documents, including identification cards, credit cards, counterfeit checks, bank statements, and counterfeit Social Security Administration records were seized. More specifically, four authentic Social Security cards in other individual's names were seized pursuant to the search warrant, including a replacement Social Security card for L.A. More than 40 credit cards were seized in the names of individuals other than Taylor WILSON, including five credit cards in L.A's name. Numerous identification cards in the names of other individuals were seized including driver's licenses and identification cards from Wisconsin and Texas.

22. Amongst the seized documents, Detective Wallander discovered numerous items belonging to another individual identified by the initials B.D.A. Documents seized in BDA's name included an authentic Social Security card, correspondence from the Internal Revenue Service indicating that BDA filed 2013 tax return which was being reviewed for accuracy, a Capitol One credit card, a PayPal credit card, a NetSpend premier Visa debit card, and a Wisconsin Birth Certificate. The address where the IRS correspondence and credit cards had been sent was 2136 N. Prospect Avenue, Apartment 147, Milwaukee, Wisconsin, 53202 – the address for East Bank Storage.

23. Also located within WILSON'S apartment were a desktop computer that was connected to the internet and a brand new laptop computer in its original box. According to the shipping label, the laptop was purchased under WILSON'S alias name of Candace Taylor on QVC

and was shipped to a gas station located near 60th and Villard in Milwaukee. Neither computer was ever forensically searched.

24. I queried the real L.A's Social Security account information and determined that the Social Security Administration had processed a replacement Social Security card for L.A. on April 7, 2016, at the Greenfield, Wisconsin Social Security field office located at 8455 W. Layton Avenue, Greenfield, WI 53228. As proof of identity, the same Illinois identification card (15352088645A) was provided to SSA officials. This is the Illinois identification card bearing L.A's name and WILSON'S photograph. Thereafter, the Social Security Administration mailed L.A's replacement Social Security card, via the United States Postal Service, to 3731 W. Oklahoma Avenue, Milwaukee, Wisconsin, 53215, from its Central Office in Baltimore, MD.

25. On February 9, 2017, Detective Wallander and I went to the Milwaukee County House of Corrections and attempted to interview WILSON. However, WILSON invoked her right to counsel and the interview was terminated. Approximately 4 days later, having served the remainder of her Probation violation time, WILSON was released from custody.

26. On February 15, 2017, just as Detective Wallander and Postal Inspector Metke were leaving East Bank Storage after having reviewed the mail in the box listed in L.A.'s name, they ran directly into WILSON as she was walking into the business. They passed WILSON at a range of less than eight feet. Detective Wallander tried to avoid looking at WILSON, but it was obvious she recognized Detective Wallander as he had just spoken to her six days prior. After Wilson left East Bank Storage, law enforcement lost track of her movements and location for several months.

27. During her incarceration at the House of Correction, WILSON made approximately 251 phone calls and each of them were recorded. Detective Wallander obtained copies of WILSON'S phone calls and listened to about 132 calls between the period December 29, 2016,

and January 17, 2017. I listened to about 119 calls between the period December 7, 2016 and December 29, 2016. Due to the volume of calls, we both became very familiar with the sound of her voice.

28. On September 25, 2017, the owners of The UPS Store franchise number 6796, located at 1314 S. 1st Street, Milwaukee, Wisconsin contacted Postal Inspector Metke directly about a suspicious situation involving one of their customers. The UPS Store owners reported that a customer named Taylor WILSON opened up a mail receiving account for box number 122 at their store on August 2, 2017, and that she has been receiving United States Mail in the names of three other women who WILSON told the owners were her roommates. The UPS Store owners explained they had repeatedly told WILSON she had to have each person that was going to receive mail at this box physically come into the store, complete Postal Service form 1583, and provide an identification card to prove their identity. The UPS Store owners reported that the only United States Mail they received in the names of WILSON'S "roommates" were from banks, credit unions, and other financial institutions.

29. Postal Inspector Metke showed The UPS Store owners two color photographs of Taylor C. WILSON and they immediately identified her as their customer. WILSON rented box 122 at The UPS Store for a period of two months during which time the owners stopped allowing WILSON to receive mail that was not in her name. WILSON'S contract terminated on October 2, 2017, and she did not renew it. From late September 2017 through the present day, The UPS Store owners stopped returning financial documents mailed to box 122 to the sender and have detained this United States Mail at Postal Inspector Metke's request.

30. A review of the Mail pieces in Postal Inspector Metke's possession from box 122 at The UPS Store include: thirty seven (37) letters from six (6) separate financial institutions

addressed in the name of S.P., including one letter that would appear to be a Personal Identification Number or PIN account access control number and one letter that would appear to contain a physical credit card; fourteen (14) letters addressed in the name of C.S. from the TCF Bank including two letters that would appear to be a Personal Identification Number or PIN account access control numbers and one letter that would appear to contain a book of starter checks; four (4) letters from three (3) separate financial institutions addressed in the name of A.B.; and four (5) letters from three (3) separate financial institutions addressed and one from T-Mobile telephone service, in the name of Taylor WILSON.

31.     With the reappearance of WILSON after having lost track of her from February 2017 to late September 2017, Detective Wallander began contacting local financial institutions seeking information on the names of these newly discovered identity theft victims. One financial institution, the Summit Credit Union, advised Detective Wallander that they had an account for S.P.; however, their account was for S.P. residing at the address of 2136 N. Prospect Avenue, Apt 107, Milwaukee, Wisconsin 53202, which is the address of East Bank Storage.

32.     During this same time frame, Detective Wallander began searching law enforcement databases for the new names of identity theft victims identified by The UPS Store, when he located a stolen car report taken by the Milwaukee County Sheriff's Office. The automobile theft report stemmed from a complaint by Alamo Car Rentals at General Mitchell International Airport that a woman who identified herself as A.B. from Greenville, South Carolina rented a 2016 Chevrolet Equinox and failed to return the vehicle by May 30, 2017, when it was due to be returned. Alamo Car Rentals was able to remotely disable the Chevrolet Equinox and using an installed vehicle location device found it parked at the northwest corner of the intersection of S. 6th Street and W. Dakota Street, in the City of Milwaukee. Based upon this location

information the Milwaukee Police detained the vehicle for Alamo to retrieve the vehicle.

33. On October 10, 2017, Postal Inspector Metke met Detective Wallander at East Bank Storage. Postal Inspector Metke arrived ahead of Detective Wallander. As Postal Inspector Metke waited for his arrival, WILSON pulled into the parking lot operating a maroon 2016 Nissan Rogue bearing North Carolina registration plate number EDY-5976. This vehicle registration revealed the owner of the vehicle to be Enterprise Rental Cars. As Detective Wallander drove in, he recognized this vehicle as possibly being operated by WILSON. Detective Wallander had received information suggesting that WILSON was living in an apartment building located at 2869 S. 6th Street, Milwaukee Wisconsin and he had observed this vehicle with the same North Carolina license plate parked next to this apartment building in the 600 block of W. Dakota Street the day prior. They each took photographs of the vehicle and set up at surveillance points away from East Bank Storage. After WILSON left and drove away, they made contact inside the business.

34. After identifying themselves to the new manager of East Bank Storage, Postal Inspector Metke retrieved two color photographs of WILSON, which the manager identified as S.P., the customer who had just checked her box, number 107. Postal Inspector Metke requested to see the Postal Service form 1583 for box 107 in order to see what form of identification had been presented to East Bank Storage. Attached to the form was a copy of State of Texas Driver License number 34266481. The Texas Driver License was in the name of S.P. but contained the photographic image of WILSON. A search of the Texas Department of Public Safety database confirmed that the license was fraudulent as Texas Driver License number 34266481 is not assigned to S.P. or any female, but rather belongs to a man of Arabic descent from Houston, Texas. In addition to the Postal Service form 1583, East Bank Storage also requires a customer to complete a contract. On the contract, WILSON, posing as S.P., listed an "Alternate Contact" as

L.B.

35.     East Bank Storage provided surveillance video from earlier that day which depicted WILSON entering the store, accessing box 107, and removing United States Mail. In following days, the manager of East Bank Storage provided me images of incoming United States Mail going to box 107 in the names of S.P. and L.B.

### Identification of WILSON'S Current Address

36.     Postal Inspector Metke conducted a law enforcement search of the Thomson-Reuters CLEAR database for A.B. living anywhere in the State of Wisconsin. Postal Inspector Metke received only one response, the address of 2869 S. 6th Street, Apartment 3, Milwaukee Wisconsin, 53215. The address of 2869 S. 6th Street is a two-story, cream colored brick, eight unit, multi-family apartment complex with a common doorway entrance that faces east to S. 6th Street. The front entrance to the building contains a side-by-side double door with the address numbers 2869 listed in black colored numerals printed upon white tiles affixed to the building above the main entrance. Access to apartment number three is through the main entrance past the bank of eight mailboxes on the first floor level of the building. Apartment three is located on the southwest side of the buildings first floor level and is accessed from the main hallway by a dark wood door with a black colored number three ("3") attached above the peep hole in the door. The building is located on the northwest corner of the intersection of S. 6th Street and W. Dakota Street, the same intersection where the stolen Chevrolet Equinox rented by a woman purporting to be A.B. was located by the Milwaukee Police, as discussed in paragraph 32 above.

37.     On November 1, 2017, Postal Inspector Metke traveled to the address of 2869 S. 6th Street, Milwaukee Wisconsin 53215. As he rounded the corner from S. 6th Street on W. Dakota Street, Postal Inspector Metke observed WILSON exit a Maroon colored Kia Sportage sport utility

vehicle bearing Illinois registration plates Q22-0134, and walk into the building. This vehicle registration revealed the owner of the vehicle to be AVIS Rental Cars. Postal Inspector Metke drove by WILSON without slowing and as she was engaged on her cell phone, she never looked in his direction. A short time later, he returned and photographed the vehicle she exited. Postal Inspector Metke then used his Postal Service delivery access key to check the United States Mail delivery boxes for the building. The delivery box for Apartment 3 had only the last name of A.B. on it.

38.  Postal Inspector Metke contacted the United States Postal Service station for the delivery of Mail to 2869 S. 6th Street, Apartment 3, Milwaukee Wisconsin, 53215 and requested a delay in the delivery of Mail to this location so that he could review the incoming Mail prior to delivery at this address.

39.  On November 14, 2017, Postal Inspector Metke observed Mail addressed Taylor WILSON, 2869 S.6th St. #3 Milwaukee, WI 53215 coming from the Department of Children and Families in Madison, Wisconsin, along with a WE Energies bill made out to C.D., 2869 S.6th St. Apt. 3 Milwaukee, WI 53215, in addition to a letter addressed to A.B. at this address and one from the Milwaukee Public School District addressed to the parent/guardian of A.S.W.

40.  On November 20, 2017, Postal Inspector Metke observed Mail again coming from the Milwaukee Public School District addressed to Taylor WILSON, 2869 S.6th St. #3 Milwaukee, Wisconsin 53215 along with a bill from Spectrum the local provider of Internet, telephone, and cable television service in the name of B.F., 2869 S.6th St. Apt.3 Milwaukee, Wisconsin 53215.

41.  On November 30, 2017, Postal Inspector Metke observed Mail coming from Landmark Credit Union addressed to A.B., 2869 S.6th St. Milwaukee, WI 53215, as well as a letter from the Wisconsin Department of Transportation, which appears to contain a Driver License

addressed to A.C., 2869 S.6th St. Apt.3 Milwaukee, Wisconsin 53215.

42.     A grand jury subpoena was served on Landmark Credit Union for records of any accounts under the name A.B. and S.P., and the credit union located accounts under both identities. The account for A.B. was opened in June 2017 and closed in October 2017 due to suspicious activity. The SSN and DOB used to open this account did not match and neither were associated with anyone named A.B. The mailing address provided to Landmark Credit Union was 2869 S. 6th Street, Milwaukee, WI, and the phone number provided was (262) 565-8618.

43.     The Landmark Credit Union account for S.P. was opened in August 2017 and closed in September 2017 for numerous returned and unpaid checks. The SSN used to open this account ended in 2240, which is assigned to a 29-year old white female. The mailing address provided to Landmark Credit Union was 1314 S. 1st Street, Milwaukee, Wisconsin, and the phone was (262) 565-8617, one digit difference from the number provided for A.B.'s Landmark Credit Union account.

44.     On September 15, 2017, debit card purchases for Intuit's QuickBooks Online software and Intuit's Payroll feature posted to the Landmark Credit Union account for S.P. I know that QuickBooks is an accounting software package sold by Intuit. QuickBooks products are generally marketed toward small and medium-sized businesses and offer online services for accepting payments, managing and paying bills, and payroll functions.

45.     I served a grand jury subpoena on Wisconsin Energy seeking account information and recorded telephone calls for service recently established at 2869 S. Sixth Street, Apartment 3, Milwaukee, Wisconsin 53215. Wisconsin Energy indicated that it had two recent accounts listed at that address. The first account related to an attempt to open service at that address but Wisconsin Energy denied it after the applicant failed their ID check. This attempt for service occurred via a

telephone call on May 22, 2017. Wisconsin Energy provide a copy of the recording and, based upon my experience listening to WILSON'S many recorded jail calls, I believe the caller is WILSON. During the call, WILSON used the name A.B. with an SSN ending in 0422, which belongs to a 22-year old female with a different name. WILSON provided a past address of 1314 South First Street, which is the address for the UPS Store discussed in paragraphs 28-30 above.

46. On June 20, 2017, WILSON successfully established service at 2869 S. 6th Street, Apartment 3, Milwaukee, Wisconsin, 53215. Wisconsin Energy provided a copy of the recorded call on that date and, in my opinion, the caller is WILSON. WILSON identified herself as C.D., provided an SSN ending in 2240 and a DOB year of 1993. The SSN and birthdate provided by WILSON are an exact match for a 24-year old female named C.D.

47. Pursuant to a grand jury subpoena, Wisconsin Energy also provided documents and copies of recorded calls, all of which I believe record WILSON'S voice, for five other accounts opened under the name of L.A. or Candace Taylor, an alias WILSON has admitted to law enforcement she "made up" and used on occasion. Summarized, these accounts were opened between October 2012 and July 2016 for four different addresses, including 1573 S. 74th Street, West Allis, Wisconsin (referenced in paragraphs 21-22 above). During her various contacts with Wisconsin Energy regarding these accounts, WILSON provided an SSN assigned to a 5-year old male, an SSN assigned to a 38-year old white female, and invalid SSNs that have not been assigned to any person. Many of these accounts were closed for unpaid bills and sent to collection.

**WILSON'S Criminal History, Pending Case, and Most Recent Arrest**

48. Taylor C. WILSON is a convicted felon who has a 15 year career of committing financial crimes in at least 4 counties in the State of Wisconsin. WILSON has been convicted of several state offenses including Uttering of Counterfeit Checks; Fraudulently Procuring, Making,

Altering, Reproducing, or Duplicating a Special Identification Card; Issuing Worthless Checks; Obstructing Police; and Bail Jumping.

49.     On Friday, November 24, 2017, WILSON was charged in Milwaukee County Circuit Court Case Number 2017CF005389 with Misappropriation of Identification Documents to Obtain Money (Identity Theft), Fraud against a Financial Institution, and Obstructing Police. She was released on $350 cash bond on November 29, 2017. On January 11, 2018, WILSON failed to appear for a scheduled court appearance. A warrant was issued and stayed until her next court date, scheduled for February 12, 2018.

50.     At the time of WILSON'S November 20, 2017, arrest, which resulted in the pending charges in Case Number 2017CF0005389, WILSON was in possession of a counterfeit State of South Carolina Driver License bearing number 038512656 in the name of C.S. and bearing WILSON'S image. The picture appears to be the same picture of WILSON that appeared on the Texas Driver's License in the name of S.P. that WILSON used to open the East Bank Storage account referenced in paragraph 34 above.

51.     On January 29, 2018, WILSON was arrested by the Greenfield Police Department after the Credit Union Service Center located at 6126 W. Layton Avenue reported that a woman was attempting to pass a fraudulent payroll check at their drive thru window. The drive thru teller recognized the name A.B., because on January 27, 2018, A.B. had attempted to cash a check at that same branch but was turned away because her account had a negative balance. On January 27, 2018, A.B. presented a Texas driver's license, which another teller copied because she was suspicious of A.B.

52.     WILSON was detained by law enforcement after leaving the drive thru. She presented a Texas driver's license in the name of A.B. The officer ran the Texas DL number and

determined that it belongs to H.E., a male, DOB year 1980, who lives in Texas. WILSON refused to provide her correct name to the officer and her true identity was only discovered once she was arrested and processed at the Greenfield Police Department.

53.　　At the time of her January 29, 2018, arrest, WILSON had several forms of fraudulent identification in the names of other individuals that bore WILSON'S photograph in her possession, as well as unauthorized debit cards, credit cards, checks, and items of mail. In particular, WILSON possessed the following items, in the names of the individuals identified by initials below:

| A.B. | C.S. | S.P. | C.D. | L.B. | WILSON |
|------|------|------|------|------|--------|
| Sam's Club Card; Texas DL; Summit Credit Union Debit Card; TCF Bank Debit Card; Woodforest National Bank Debit Card; Green Dot Visa; AmEx credit card; check deposit slips; and paystub | Sam's Club Card; Landmark Credit Union checkbook | Old Navy credit card; AmEx credit card | Wisconsin Energy Bill for 2860 S. 6th Street, Apt. 3, Milwaukee, WI (WILSON'S current address; bill due date 1/30/2018) | Several items of mail from various banks addressed to 2136 N. Prospect Avenue, Milwaukee, WI (East Bank Storage) | Sam's Club Card; AAA membership card; Wisconsin Quest Card; Club Bebe Card |

## Authorization to Seize and Search Electronic Evidence

54.　　As described above and in Attachment B, this application seeks permission to search for records that might be found in WILSON'S residence, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage

media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

55.      I submit that if a computer or storage medium is found on the premises of WILSON'S residence, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.      WILSON does not appear to be lawfully employed and has no known connection to any legitimate business. I am also aware that WILSON, using the identity of her victims, has a history of negotiating or attempting to negotiate counterfeit payroll checks. Finally, I know that as recently as November 2017, Spectrum was providing Internet service to WILSON'S apartment and billing the service to B.F. at 2869 S.6th St. #3 Milwaukee, Wisconsin 53215. For these reasons, I believe WILSON likely has a computer in her apartment and may be using QuickBooks online software and the Payroll feature, which she recently purchased, to manufacture counterfeit payroll checks.

b.      Based on my knowledge, training, experience, and information provided to me by other law enforcement officers, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.      Computer storage media—in particular, computers' internal hard drives—

can contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

56.     As further noted in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the premises because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

c.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.     Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

57.     In most cases, a thorough search of the premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. Seizure is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.     Not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.     Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.     Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

58.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and Attachments A and B, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the

entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

CONCLUSION

59.     Based upon the foregoing information, I respectfully submit that probable cause exists to believe that Taylor C. WILSON has stolen the identities of no less than eight individuals, (N.L., L.A., B.D.A., A.B., C.S., S.P., C.D., and L.B.), and used these identities to a) open accounts with more than a dozen financial institutions, negotiate fraudulent checks, and make unauthorized purchases; b) rent an apartment; c) rent motor vehicles, fail to return them and convert them to her use; d) obtain electric power utility service, Internet, telephone and cable television service; and e) obtain fraudulent forms of identification, including driver's licenses and social security cards. These acts constitution violations of 18 U.S.C. §§ 1028(a)(7) (identity theft); 1029(a)(2) (access device fraud); 1028(A) (aggravated identity theft); 1341 (mail fraud); and 1344 (bank fraud).

60.     As such, I am seeking authorization to search 2869 S. 6th St. #3 Milwaukee, Wisconsin, 53215, and any devices found on the premises, as described in Attachment A, and to seize items constituting evidence of WILSON'S execution of this scheme and to show WILSON'S control over the premises and any devices as described in Attachment B.

## ATTACHMENT A
### Location and Items to be searched

1.    The location/items to be searched are described as follows:

      a.    2869 S. 6th Street, Apartment 3, Milwaukee, Wisconsin 53215. This address is a two story, cream-colored brick, eight-unit multi-family apartment complex located on the northwest corner of South 6th and Dakota Streets. The main entrance faces east to 6th Street and contains a common side-by-side double door with the address numbers 2869 listed in black colored numerals printed upon white tiles affixed to the building above the main entrance. Access to apartment three is through the main entrance past the eight mailboxes on the first floor of the building. Apartment three is located on the southwest side on the first floor level and has the numeral "3" attached above the peep hole; and

      b.    Any laptop computer, desktop computer, hard drive, or electronic storage medium, such as a thumb drive or disk, found within the premises.

2.    The warrant authorizes the forensic examination of any computer, hard drive, or electronic storage medium, for the purpose of identifying information described in Attachment B.

## ATTACHMENT B
### Items to be seized

1.      Any items located within the premises or on the devices described in Attachment A that relate to violations of 18 U.S.C. §§ 1028(a)(7) (identity theft); 1029(a)(2) (access device fraud); 1028(A) (aggravated identity theft); 1341 (mail fraud); and 1344 (bank fraud); and 42 U.S.C. § 408(a) (false statements to SSA), and involve Taylor C. WILSON, or any of her known or unknown victims or aliases, including but not limited to:

  a.      All bank records, debit cards, credit cards, checks, billing statements, account information, credit applications, receipts, and other financial records, whether in electronic or hard copy form;

  b.      Identifying information of any and all individuals, including but not limited to, names, dates of birth, social security numbers, EINs, addresses, telephone numbers, identification cards, bank account numbers, credit card numbers and related information;

  c.      Any records or information regarding travel or car rental agreements;

  d.      Any records or evidence of user attribution showing who owned or exercised control over the premises or devices described in Attachment A, as well as the manner in which any devices were used;

  e.      Incoming and outgoing e-mails, attachments, sms, mms, images and graphics, videos, audio recordings and photographs;

  f.      Any records of documents pertaining to accounts held with Internet Service Providers or Internet use;

g. Any retained social networking communications, including but not limited to text messages, You Tube communications, Facebook communications, and Skype messaging and Skype conversations;

h. Computer-related documentation, meaning any written, recorded, printed, or electronically stored material which explains or illustrates the configuration or use of any seized computer hardware, software, applications and program files or related items;

i. Computer passwords and data security devices, meaning any devices, programs, or data-whether themselves in the nature of hardware or software-that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form;

j. Records of personal and business activities relating to the operation of a computer, such as telephone records, notes (however and wherever written, stored or maintained), books, diaries, and reference materials relating to the charged offenses; and

k.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.